# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LYDIA MCCOY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-388-JWD-SDJ** |
| **ZANTAVIA HAMILTON BOGAN, et al.** | |

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report and Recommendation. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

### ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 9, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LYDIA MCCOY**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 20-388-JWD-SDJ**

**ZANTAVIA HAMILTON**
**BOGAN, et al.**

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Before the Court is Wilson Fields' Motion to Dismiss (R. Doc. 78) and a Motion to Dismiss (R. Doc. 82) filed by the BRPD and BRFD Defendants. The remaining Defendants did not move to dismiss Plaintiff's Amended Complaint (R. Doc. 75). But because Plaintiff is proceeding in forma pauperis, the Court has screened her Amended Complaint (R. Doc. 75) as to the non-moving Defendants pursuant to 28 U.S.C. § 1915(e)(2). As outlined below, the Court **RECOMMENDS** that Plaintiff's cause of action be **DISMISSED** in its entirety, as follows:

- Wilson Fields enjoys absolute judicial immunity. And so, his Motion to Dismiss (R. Doc. 78) should be **granted** and all claims against him be **dismissed with prejudice**.

- The City of Baton Rouge and the individual BRPD and BRFD Defendants' Motion to Dismiss (R. Doc. 82) should be **granted**. Plaintiff's federal claims should be **dismissed with prejudice,** and the Court should "decline to exercise jurisdiction" over the state law claims pursuant to 28 U.S.C. § 1367(c)(3), which should be **dismissed without prejudice**.

- Non-moving Defendant Larry Spencer enjoys absolute judicial immunity, and all claims against him (both state and federal) should be **dismissed with prejudice**.

- Defendants Zantavia Bogan, Kendal Brookins, PPQBR, LLC, Cardinal Group Management, LLC, and Gideon Carter did not move to dismiss. Nonetheless, Plaintiff's federal claims should be **dismissed with prejudice** and the Court should "decline to exercise jurisdiction" over the state law claims pursuant to 28 U.S.C. § 1367(c)(3), which should be **dismissed without prejudice**.

# I.    PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on June 19, 2020. (R. Doc. 1).[1] The Complaint was 53 pages and named 21 Defendants. When each Defendant responded by filing Motions to Dismiss (R. Docs. 25, 42, 43, 44), Plaintiff sought leave to amend (R. Doc. 59) her Complaint to address the alleged deficiencies. Because Plaintiff is proceeding pro se, the Court granted her leave to amend and denied the Motions to Dismiss without prejudice. (R. Docs. 68, 74). Plaintiff's Amended Complaint (R. Doc. 75) was entered into the record on August 23, 2021. Plaintiff's Amended Complaint is 69 pages long and added a new Defendant, Larry Spencer, bringing the total number of Defendants to 22. (R. Doc. 75).

In response, Judge Wilson Fields (R. Doc. 78) filed a Motion to Dismiss based on judicial immunity and Plaintiff's failure to state a claim. A second Motion to Dismiss (R. Doc. 82) was filed by the following Defendants seeking dismissal based on qualified immunity and Plaintiff's failure to state a claim: "the City of Baton Rouge through the Baton Rouge Police Department; Benjamin Sanders, Christian Allen, Heather Anderson, Randy Bonaventure, Michael Rarick, Jay Lapeyrouse, Dominic Distefano, Con Poe 1, Con Poes 2-4, all employed by the Baton Rouge Police Department; Deelee Morris, legal advisor to the Baton Rouge Police Department; [and] Richard Wells, Captain with the Baton Rouge Fire Department" (BRPD and BRFD Defendants).

---

[1] Plaintiff is no stranger to litigation in this Court (and others). Indeed, this is one of at least 5 actions she has had pending in this Court over the past 2-plus years. *See Jane Doe v. City of Baton Rouge, et al.*, No. 19-cv-48-SDD-RLB (M.D. La. filed Jan. 25, 2019) (alleging a grand conspiracy between the police, DA's office, attorney general's office, a judge and private actors, in addition to being the victim of a crime and suffering permanent disfigurement); *Lydia McCoy v. Tiger Manor, LLC, et al.*, No. 19-cv-723-JWD-SDJ (M.D. La. filed Oct. 16, 2019) (alleging fraud and violations of the Fair Credit Reporting Act); *Jane Doe v. City of Baton Rouge, et al.*, No. 20-cv-514-JWD-EWD (M.D. La. filed Aug. 6, 2020) (alleging a grand conspiracy between 44 defendants spread out among various levels of state and municipal government and the private sector, in addition to being the victim of a crime and permanent disfigurement), *Lydia McCoy v. Lorraine McCormick, et al.*, No. 22-cv-443-BAJ-RLB (M.D. La. filed Jan. 28, 2022) (alleging a grand conspiracy between state court judges and private actors to deny her access to courts, among other things).

(R. Doc. 82 at 1). The remaining Defendants — Zantavia Bogan, Kendal Brookins, PPQBR, LLC, Gideon Carter, and Larry Spencer[2] — did not move to dismiss following entry of the Amended Complaint. (R. Doc. 75).

Although Plaintiff was granted three separate extensions of time (R. Docs. 84, 89, 91), she failed to oppose or otherwise respond to either Motion to Dismiss (R. Docs. 78, 82). Therefore, the Court considers those Motions (R. Docs. 78, 82) as unopposed.

As discussed below, the Court first resolves Judge Wilson Fields' Motion to Dismiss (R. Doc. 78), before turning to the Motion to Dismiss (R. Doc. 82) filed by the BRPD and BRFD Defendants. Finally, the Court conducts a § 1915 screening of Plaintiff's claims against the non-moving Defendants.

## II.    FACTUAL ALLEGATIONS

The Amended Complaint (R. Doc. 75) is 69 pages long and describes a fantastical and wide-ranging conspiracy involving numerous officials of the Baton Rouge Police and Fire Departments, a state court judge, a justice of the peace, the owners and managers of Plaintiff's apartment complex, and a local attorney—all of whom were apparently united against Plaintiff.  In her own words, Plaintiff summarizes her cause of action, as follows:

> This case arises out of unscrupulous and deceitful actions of public officials, including creating fraudulent, misleading police reports by Baton Rouge Police Department in order to deny Plaintiff access to courts, covering up the crime of violence, committed against Plaintiff, failing to properly address numerous reports of excessive illegal narcotics usage on the property, owned by PPQBR. It also arises out of Baton Rouge Fire Department creating incomplete, misleading reports and providing false testimony regarding investigation of toxic illegal drugs' fumes. It arises out of city-parish officials falsifying and destructing relevant records. Finally, it arises out of despicable actions of Bogan and Brookins, the managers of the property, owned by PPQBR, in covering up crimes and wrongdoings in which BRPD, BRFD, and other public entities assisted them with.

---

[2] The record does not contain a summons or otherwise indicate proof of service for Defendant Larry Spencer, who was added as a Defendant in the Amended Complaint.

(R. Doc. 75 at 7). Against this backdrop, Plaintiff's Amended Complaint includes the factual allegations described below.

In late May of 2019, Plaintiff began leasing an apartment at the Retreat at Brightside, which she alleges is "owned by [Defendant] PPQBR and managed by" Defendants Zantavia Bogan, Kendal Brookins, and Cardinal Group Management, LLC. (R. Doc. 75 at 2, 4). On June 12, 2019, at 11:00 p.m., Plaintiff claims that her "deranged, nasty roommate" began watching "some horror movie-garbage" on "maximum volume" in the common area of their apartment.[3] (R. Doc. 75 at 11). Unable able to sleep for "about 40 minutes," Plaintiff became "physically exhausted due to constant noise-induced battery, [and] called the police and requested assistance." (R. Doc. 75 at 11). But before they arrived, the roommate decreased the volume to a reasonable level. And so, Plaintiff again called the police to "cancel the call." (R. Doc. 75 at 11). Two BRPD Officers nonetheless came to the apartment and spoke with both Plaintiff and her roommate. The Amended Complaint identifies only one of the officers as Defendant Christian Allen. (R. Doc. 75 at 12).

Following this incident, Plaintiff obtained a copy of the police report, which she describes as "misleading, fabricated [and] phony." (R. Doc. 75 at 12). According to Plaintiff, her many requests to have this and countless other reports corrected were ignored by BRPD Officers, including Michael Rarick, Jay Lapeyrouse, and Dominic Distefano. (R. Doc. 75 at 13, 28) (these Defendants did not return Plaintiff's calls or respond to her written requests).

Plaintiff again encountered a BRPD Officer at her apartment complex the following morning — June 13, 2019. (R. Doc. 75 at 13-14) (the BRPD Officer is not identified). According to Plaintiff, the BRPD had been called to the apartment by her roommate, who Plaintiff describes as a "bastard that's so low and nasty that would stop at nothing to get it its way," following a

---

[3] Plaintiff's roommate was assigned to her by the apartment complex; the two women did not know each other before moving in together. (R. Doc. 75 at 8).

dispute about the air conditioner. (R. Doc. 75 at 13-15) ("Plaintiff went back to her room and soon realized that the air-conditioner was again turned off. She stepped out and turned the switch back on again. . . . The deranged roommate . . . started moving at her like a tank.").

The police report following this encounter was also fraudulent, according to Plaintiff. (R. Doc. 75 at 15) ("misleading BRPD 'reports' are replete with fabrications such as '(Plaintiff) and (the roommate) were arguing.' Plaintiff never 'argued' with the roommate").

Later that day, Plaintiff again called the police about her roommate, and the roommate's "450-pound male" visitor, when Plaintiff "discovered that some of her food was eaten, her brand new, with not a scratch on it, Japanese omelet pan was destroyed . . . and her bathroom . . . was trashed." (R. Doc. 75 at 16, 17). BRPD Corporal Heather Anderson was dispatched to Plaintiff's apartment and spoke with both Plaintiff and her roommate. (R. Doc. 75 at 17). Plaintiff also reported the issue to her apartment's managers, Defendants Bogan and Brookins, but neither the police nor the apartment complex provided a level of assistance that could satisfy Plaintiff.

According to Plaintiff, Corporal Anderson initially expressed concern for Plaintiff's safety until later speaking with Bogan and Brookins at the apartment's management office. Plaintiff believes Bogan and Brookins lied to Corporal Anderson to "smear Plaintiff." (R. Doc. 75 at 17-18); (R. Doc. 75 at 30) ("all the staff outrageously lie about everything").

Within 30 minutes of Corporal Anderson leaving the apartment complex on June 13, 2019, Plaintiff again called the police because her roommate had (once again) turned off the air conditioner inside their apartment. (R. Doc. 75 at 18). Corporal Anderson was dispatched back to the apartment. (R. Doc. 75 at 18). According to the Amended Complaint,

> When Plaintiff obtained the 'public record' that pertains to the incidents of stealing, trashing Plaintiff's property, and threatening Lydia McCoy with violence if she touches the thermostat and turns it back on, she realized that there was nothing truthful in the report . . . .

> From the misleading Anderson's report, it appears that she only came to speak with Plaintiff once, although there were 3 separate calls and 3 separate responses. It is unclear whether Anderson initially created a phony report or whether it was later 'proofread' by [BRPD Attorney Deelee] Morris who has been part of other crime cover-ups and unlawful, underhanded acts of BRPD.

(R. Doc. 75 at 18).

Less than a week later, Plaintiff claims that while trying to assemble her new bedframe in the apartment's common area, her roommate began moving the wooden pieces of the frame out of the common area. In the process, one of the wooden pieces hit Plaintiff on the shoulder. (R. Doc. 75 at 20). "Plaintiff quickly . . . made a video of her damaged shoulder" and took "photographs of the injury. Then, Plaintiff dialed local police, requesting assistance due to the physical violent attack . . . ." (R. Doc. 75 at 20). BRPD Officer Benjamin Sanders eventually arrived, but Plaintiff claims "Sanders was not even listening to Plaintiff, did not look at her injured shoulder, and refused to accept the photographs, shaking his head and mumbling unintelligibly . . . ." (R. Doc. 75 at 23).

Although Plaintiff believed this "violent attack" went ignored by BRPD, she again contacted BRPD within days to report a second crime—a missing ceramic baking dish which she claims was stolen by her roommate. (R. Doc. 75 at 25).

Plaintiff repeatedly called BRPD, including Officer Sanders, about her injured shoulder and missing baking dish. (R. Doc. 75 at 25). Eventually, she was told by Sergeant Randy Bonaventure that "he reviewed the case and 'the reason why (the roommate) was not charged is because there was no physical injury.'" (R. Doc. 75 at 26). Insisting this was incorrect, Plaintiff met with Sgt. Bonaventure on November 15, 2019, and provided pictures and other evidence of her alleged shoulder injury. (R. Doc. 75 at 26). She also spoke with "Con Poe 1" on a separate trip to the police station about the alleged attack that injured her shoulder. (R. Doc. 75 at 26-28).

Nonetheless, Plaintiff claims the reports associated with this incident are "misleading, incomplete, and manufactured." (R. Doc. 75 at 28).

Plaintiff encountered numerous issues with her roommate and other occupants of the apartment complex during her time as a tenant. (R. Doc. 75 at 30) (Plaintiff describes her roommate as a "deranged, violent, disgusting criminal that attacked her and caused permanent shoulder deformity and chronic pain."); (R. Doc. 75 at 29) ("When Plaintiff changed the units on June 19, 2019, she started noticing strong marijuana and tobacco smell entering her unit through the air-conditioning vent."). She constantly reported issues to the apartment's managers, Bogan and Brookins, and made numerous requests to change units. (R. Doc. 75 at 29, 46) (Plaintiff changed units on multiple occasions).

She claims that the apartment complex housed numerous drug addicts who both used and manufactured illegal substances on-sight. Because of this, Plaintiff alleges that she and her dogs were exposed to dangerous and toxic illegal drugs and second-hand smoke circulating throughout the apartment's ventilation system. (R. Doc. 75 at 30). ("Toxic fumes . . . [entered] through the vent in the bathroom and the concentration of disgusting illegal drugs . . . was so excessive . . . ."). Both the health of Plaintiff and her dogs allegedly began to "deteriorate[]." (R. Doc. 75 at 32) ("Plaintiff started experiencing acute internal organs pain . . . ."); (R. Doc. 75 at 46) ("Plaintiff continued suffering by living with her doors open at nearly all times while she is home, unable to use the air-conditioner, unable to use her bedroom or bathroom, being subjected to the second hand and third hand smoking of illegal narcotics and other substances.").[4]

According to Plaintiff, "[h]er acute internal pain would intensify when the smoking in the adjacent units was actively going on, and she would crawl outside, unable to stand straight, and

---

[4] All the while, Plaintiff constantly complained about the situation at her apartment complex to both the management office (Bogan and Brookins), and the Baton Rouge Police and Fire Departments, to no avail.

would scream in pain." (R. Doc. 75 at 33). On October 8, 2019, Plaintiff called an ambulance, as she was "being subjected to the excessive amounts of secondhand smoke and other by-products of [] drug[s]." (R. Doc. 75 at 33). But "[a]s the pain subsided by the time they arrived, she refused to go to the hospital." (R. Doc. 75 at 33). When Plaintiff asked "Baton Rouge Emergency Medical Services (EMS)" for the records associated with this incidence, she was told that none existed. (R. Doc. 75 at 33).

Indeed, Plaintiff often called 911 during her time at the apartment. (R. Doc. 75 at 36) ("She continued reporting illegal drugs and smoking of illegal substances by other tenants to BRPD to no avail."); (R. Doc. 75 at 37) ("BRFD arrived and the group of four responders walked around the apartment. They told Plaintiff that they 'could not smell anything.' Plaintiff was in disbelief . . . .").

The Baton Rouge Fire Department was dispatched on multiple occasions. Plaintiff even claims that at one point Richard Wells, "the captain of the [BRFD] team," requested backup from BRFD's "hazard materials team." (R. Doc. 75 at 38). After arriving, the hazard materials team "attempted to present the situation as th[ough] nothing wrong was with the air" as their "air testing machines . . . were not picking up on anything." (R. Doc. 75 at 38). But Plaintiff claims she eventually learned the truth — the "air testing machines . . . do not test air for marijuana, meth, tobacco or other harmful drug fumes." (R. Doc. 75 at 38).

After each encounter with the BRPD, BRFD, or EMS, Plaintiff requested any associated records, many of which she claims did not exist, while those that did were allegedly fraudulent.[5]

---

[5] It is Plaintiff's fervent belief the BRPD, BRFD, and EMS are conspiring with the employees of her apartment complex, Bogan and Brookins, and their attorney, Gideon Carter, as well as Judge Fields and Larry Spencer, to "deny [Plaintiff] access to courts." (R. Doc. 75 at 52). Indeed, she believes that this is all part of a much larger "crime cover-up" for "unlawful actions, most of which have stemmed from the events and the continuing tort, described in No. 20-514," one of the many actions Plaintiff has "filed with the US Court for the Middle District of Louisiana." (R. Doc. 75 at 34). Plaintiff further alleges:

In Plaintiff's own words: "The individuals in charge of BRPD would never let Plaintiff get any law protections or privileges that would be afforded to other people in similar circumstances **simply out of spite**." (R. Doc. 75 at 27) (emphasis added).

"Guided by the Louisiana law that permits injunctive relief and encouraged by many courts that found noxious odors and illegal drugs' odors to be harassment and dealt with violators accordingly, Plaintiff filed a petition for injunctive relief and rent abatement in the state court." (R. Doc. 75 at 39). Plaintiff's lawsuit was assigned to Judge Wilson Fields in the 19th Judicial District Court. (R. Doc. 75 at 39). Her apartment complex was represented by an attorney, Gideon Carter, throughout these proceedings. (R. Doc. 75 at 39, 40) ("some shady lawyer, appearing on apartment complex's behalf").

According to the Complaint, Judge Fields granted multiple "mockery-of-justice continuance[s]" requested by her opponents, and it became "apparent that Fields was just clowning and disguising its reprehensible acts as 'judicial acts.'" (R. Doc. 75 at 41). Judge Fields eventually granted Mr. Carter's motion to dismiss, submitted on behalf of his clients, and allegedly assessed costs against Plaintiff. (R. Doc. 75 at 44, 45) ("After unlawfully dismissing Plaintiff's case after 'playing court,' Fields hit Plaintiff with around $3000 bill most of which originated from repeated subpoena requests . . . ."). According to Plaintiff, "Fields conspired not only with state actors such as LADOJ, BRPD, 19 JD DA, and 19 JD to deny Plaintiff (in **retaliation** for her attempts to hold

---

Likely bought off by the unscrupulous apartment complex owner and management, BRPD appeared to be covering up the crimes of illegal drugs and even being 'the roof' on the entire operation(s), including manufacturing of such drugs. The destruction of Plaintiff's EMS records is also directly related to that cover-up. All those reasons for BRPD's inaction were the reasons in addition to the other reasons and the Plaintiff's 'status' with BRPD that has been actively discriminating against her **in retaliation** for the events, described in No. 20-514-LAMD.

(R. Doc. 75 at 36-37) (emphasis added).

them accountable and expose their corruption) access to courts, but also with private citizens such as Carter, Bogan, Brookins, PPQBR, and Cardinal." (R. Doc. 75 at 52).

Plaintiff claims that during the year she lived at the apartment complex, she was "repeatedly harassed" by Bogan and Brookins "regarding her packages and mail which it continued to collect unauthorizedly and sign for after multiple requests, in writing, to stop accepting any of her mail and deliveries." (R. Doc. 75 at 47) ("Bogan and Brookins continued outrageously lying that she has to 'make arrangements' with the carriers."). After living at the apartment complex for just over a year, Plaintiff claims:

> As if to confirm and cement its illegal, unlawful acts and continuous deception, Bogan and Brookins filed an eviction against Plaintiff on June 15, [2020] . . . outrageously lying that the eviction was for 'smoking, unauthorized vehicles, non-payment of rent, etc.

(R. Doc. 75 at 49); (R. Doc. 75 at 51) ("[the] apartment complex . . . Bogan and Brookins . . . falsely accuse[d] Plaintiff of exactly what she has been harassed with . . . smoking and . . . unauthorized vehicles that idle for prolonged periods of time").

Because Plaintiff "strongly suspect[ed]" that Bogan and Brookins violated the CARES Act's eviction moratorium, she requested proof that the apartment complex did not participate in any federal rental assistance programs, among other things. (R. Doc. 75 at 50). To obtain this information, Plaintiff filed a request with the presiding justice of the peace, Larry Spencer, to permit discovery pursuant to Louisiana Code of Civil Procedure Article 4912.2. (R. Doc. 75 at 50). According to Plaintiff, "'justice of the peace' Spencer and Brookins ignored the request to provide documentation. However, Spencer demonstrated its enthusiasm by calling Plaintiff and threatening her with the police." (R. Doc. 75 at 50-51).[6]

---

[6] It is unclear when and how Plaintiff eventually vacated the apartment complex, including whether she was actually evicted.

Finally, on June 17, 2020, Plaintiff claims that "a fast-moving police car arrived and parked right in front of the Plaintiff's apartment" but left after Plaintiff closed her front door. (R. Doc. 75 at 51). In Plaintiff's mind, this "strongly suggests that the police [were] checking on Plaintiff." (R. Doc. 75 at 51). And "it is reasonable to believe" that Bogan and Brookins "outrageously lied" and "made a false complaint to the police and [the police car] came on account of [Bogan and Brookins'] deceitful, bogus call." (R. Doc. 75 at 51).

Two days after the incident with the "fast-moving police car," Plaintiff filed this lawsuit, alleging a fantastical conspiracy against the 22 public and private actors[7] named as Defendants. Plaintiff has seemingly sued all named Defendants under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as the Fourteenth Amendment,[8] claiming they conspired together and "subjected Lydia McCoy to the deprivation of rights and privileges secured by the Constitution and laws, namely rights of access to courts." (R. Doc. 75 at 51-58). Specifically, the Defendants "conspired to create false records, destroy records, or withhold the records so no events have been truthfully documented and Plaintiff will not have meaningful and effective access to courts." (R. Doc. 75 at

---

[7] Wilson Fields, Larry Spencer, and the individual BRPD and BRFD Defendants have all been sued for damages in their individual or personal capacities. Therefore, personal immunity defenses are available to these Defendants. *See Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S. Ct. 3099, 3105–06, 87 L. Ed. 2d 114 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses," such as absolute or qualified immunity. "In an official-capacity action, these defenses are unavailable."); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (officials sued in personal capacity may assert defense of qualified immunity); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (judge sued in personal capacity may assert defense of absolute immunity).

[8] Plaintiff has asserted a cause of action under the Fourteenth Amendment, separate from her claim under 42 U.S.C. § 1983. However, section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere. That is, "§ 1983 is a remedial vehicle for raising claims based on the violation of constitutional rights. There can be no violation of § 1983 separate and apart from the underlying constitutional violations." *Brown v. Buhman*, 822 F.3d 1151, 1162 n.9 (10th Cir. 2016). Moreover, Plaintiff's § 1981 claims against the City of Baton Rouge and the individual public officials must likewise be asserted under § 1983. *See Knox v. City of Monroe*, 551 F. Supp. 2d 504, 512 (W.D. La. 2008) ("Knox failed to assert her claims against Hopkins and the City for alleged violations of rights provided by § 1981 through a cause of action under § 1983."). Although she has directly asserted her claims under both section 1981 and the 14th Amendment, because Plaintiff is proceeding pro se, the Court will construe these claims as if brought under section 1983.

51). Plaintiff has also sued Bogan, Brookins, PPQBR, Cardinal Management, and Larry Spencer for violating the CARES Act. (R. Doc. 75 at 63). Finally, Plaintiff asserts multiple claims under state law against the various Defendants. (R. Doc. 75 at 58-67) (including, but not limited to: "battery by particulate matter and noise," fraud, intentional infliction of emotional distress, defamation, "dangerous conditions in property and negligence," "conspiracy to inflict sever emotional distress," property damage, "respondeat superior," and personal injury).

## III.    LEGAL STANDARD

### A.    Rule 12(b)(6)

To overcome a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *Iqbal*, 556 U.S. at 678. It must go beyond "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id*. The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

### B.    28 U.S.C. § 1915(e)

Under 28 U.S.C. § 1915(e), this Court is authorized to dismiss an action brought in forma pauperis if satisfied that the claims asserted are frivolous, malicious, or otherwise fail to state a claim upon which relief may be granted. *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir.

1986). An IFP claim is properly dismissed as frivolous if it lacks an arguable basis either in law or fact. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Relevant here, a claim is "factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional . . . ris[ing] to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 32-33.

## IV.    DISCUSSION

The Court will first consider Judge Wilson Fields' Motion to Dismiss (R. Doc. 78) based on absolute judicial immunity. Second, it considers the Motion to Dismiss (R. Doc. 82) filed by the City of Baton Rouge and the individual BRPD and BRFD Defendants. Finally, the Court conducts a § 1915 screening of Plaintiff's Amended Complaint as to the non-moving Defendants. For the reasons given below, the Court recommends that Plaintiff's cause of action be dismissed in its entirety.

### A.    Judicial Immunity Bars All Federal and State Claims Against Wilson Fields

Judge Wilson Fields is a district judge in the 19th Judicial District Court who presided over Plaintiff's suit against her apartment complex for injunctive relief and rent abatement. (R. Doc. 75 at 4-5, 39-45). Plaintiff's Amended Complaint asserts multiple claims against Judge Fields under both federal and state law. (R. Doc. 75 at 51-69). Judge Fields has filed a Motion to Dismiss (R. Doc. 78) Plaintiff's federal and state law claims based on absolute judicial immunity. Plaintiff failed to oppose or otherwise respond to the Motion to Dismiss. For the reasons given below, the Court finds Plaintiff's claims against Judge Fields are barred by judicial immunity and should be dismissed with prejudice.

"Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th

Cir. 1994). This absolute immunity means that judges are "immun[e] from suit, not just from the

ultimate assessment of damages," *Mireles v. Waco*, 502 U.S. 9, 11 (1991), and applies to "bar[]

both [Plaintiff's] federal and state law claims," *Sharp v. Palmisano*, 2013 WL 5969661, at *4 (E.D.

La. Nov. 8, 2013) (judicial immunity bars state law claims under Louisiana law).[9]

Indeed, "[j]udicial immunity can be overcome only by showing that the actions complained

of were nonjudicial in nature or by showing that the actions were taken in the complete absence of

all jurisdiction." *Boyd*, 31 F.3d at 284. Actions are "judicial in nature if they are normally

performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id*.

Alleging that a judge acted with "bad faith or malice" does not preclude immunity. *Mireles*, 502

U.S. at 11.

According to Plaintiff, Judge Fields' conduct, which he undertook as part of a grand

conspiracy involving the other named Defendants, resulted in violations of multiple federal and

state laws. (R. Doc. 75 at 51-52, 54, 60-61, 66). However, all of Judge Fields' conduct, as alleged

by Plaintiff, is clearly judicial in nature.

For instance, Plaintiff claims that Judge Fields granted multiple continuances, required her

to issue subpoenas for witnesses to attend hearings, verified her identity upon entering his

courtroom, granted her opponents' motion to dismiss and assessed costs against Plaintiff. (R. Doc.

75 at 39-46). But ruling on motions and conducting hearings fall within the judicial bailiwick. *See*

*Davis v. City of Vicksburg, Miss*., 2015 WL 4251034, at *4 (S.D. Miss. Apr. 27, 2015) ("According

to Plaintiff, at the time of the alleged events the Judge was performing a judicial function—

---

[9] "The analysis is the same for both plaintiff's federal and state claims." *Price v. Irons*, 2020 WL 1638377, at *5 (E.D. La. Apr. 2, 2020). While the Court would apply Louisiana's immunity laws to Plaintiff's state law claims, *see Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008) ("In evaluating a motion to dismiss a state claim on the grounds of [] immunity, federal courts must apply the state's substantive law of [] immunity."), its analysis would not change, as the "Louisiana jurisprudence on judicial immunity mirrors the federal doctrine," *Moore v. Taylor*, 541 So. 2d 378, 381 (La. App. 2 Cir. 1989).

conducting hearings and ruling on motions."); *Hammond v. Plattsmier*, 2008 WL 1766678, at *2 (W.D. La. Apr. 17, 2008) ("Judge Jeansonne's rulings (as well as his written and oral reasons therefor) are wholly judicial acts" entitling him to absolute judicial immunity.).

And while she claims Judge Fields was involved in a wide-ranging conspiracy against her, Plaintiff does not allege that he acted outside the scope of his judicial duties or without jurisdiction. The absence of these allegations is fatal to her claim. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 636 (N.D. Tex. 2007) ("Plaintiff makes no specific allegation that Judge Buchmeyer acted outside the scope of his judicial duties and therefore acted without jurisdiction. . . . [And so,] those claims are barred by judicial immunity."). And "the fact that it is alleged that the judge acted pursuant to a conspiracy . . . is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

Based on the substance of Plaintiff's claims, Judge Fields enjoys absolute immunity barring Plaintiff's federal and state law claims. Thus, dismissal under Rule 12(b)(6) is appropriate and,

**IT IS RECOMMENDED** that Judge Fields' Motion to Dismiss be **GRANTED** and that Plaintiff's federal and state law claims against Judge Wilson Fields be **DISMISSED with prejudice** in their entirety. *See Price v. Irons*, 2020 WL 1638377, at *5 (E.D. La. Apr. 2, 2020) (dismissing federal and state law claims against judge with prejudice as all were barred by absolute immunity).

The Court now turns to the Motion to Dismiss (R. Doc. 82) filed by the City of Baton Rouge and the individual BRPD and BRFD Defendants. In her Amended Complaint, Plaintiff asserts a section 1983 claim against the City of Baton Rouge,[10] and then separately asserts an

---

[10] The Court assumes this is because the City may only be found liable for the conduct of its employees if they acted pursuant to an official policy or custom, otherwise known as *Monell* Liability. *See Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978).

identical section 1983 claim against the individual BRPD and BRFD Defendants. For her remaining federal law claims, Plaintiff does not assert separate but identical causes of action against the City of Baton Rouge and the individual BRPD and BRFD Defendants, however.[11]

The Court will therefore separately analyze Plaintiff's section 1983 claims against the City of Baton Rouge and the individual BRPD and BRFD Defendants, but it will not separately analyze her remaining federal claims against these Defendants under sections 1985 and 1986.

## B.    Section 1983 Claims Against Individual BRPD and BRFD Defendants

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). There are two steps to determining whether a defendant is protected by qualified immunity.[12] *Saucier v. Katz*, 533 U.S. 194 (2001). First, the court asks whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Second, the court considers whether "the right was 'clearly established' at the time of the challenged conduct." *Id*. Courts have the discretion to decide the order in which to answer these two questions. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).[13]

---

[11] Plaintiff additionally brings claims under sections 1981, 1985, and 1986, as well as the Equal Protection Clause of 14th Amendment. Each claim is asserted against all 22 Defendants. But whether brought against the City of Baton Rouge, or the individual BRPD and BRFD Defendants, the alleged violations of both section 1981 and the 14th Amendment should have been asserted against any public entity or official under 42 U.S.C. § 1983. For this reason, the Court includes them under its section 1983 analyses below. *See Brown v. Buhman*, 822 F.3d 1151, 1162 n.9 (10th Cir. 2016) ("[Section] 1983 is a remedial vehicle for raising claims based on the violation of constitutional rights. There can be no violation of § 1983 separate and apart from the underlying constitutional violations."); *Knox v. City of Monroe*, 551 F. Supp. 2d 504, 512 (W.D. La. 2008) ("Knox failed to assert her claims against Hopkins and the City for alleged violations of rights provided by § 1981 through a cause of action under § 1983.").

[12] Plaintiff has sued each of the individual BRPD and BRFD Defendants for damages in their individual capacities. (R. Doc. 75 at 3) ("Each defendant, employed at the time, relevant to this complaint by the City of Baton Rouge and East Baton Rouge Parish, is sued in its individual capacity."). Each has asserted qualified immunity as a defense.

[13] Once a defendant raises qualified immunity, the burden shifts to the plaintiff to plead "specific facts that, if proved, would overcome the individual defendant's immunity defense." *Jackson v. City of Beaumont Police Dep't*, 958 F.2d

"Although qualified immunity is a two-step analysis, the threshold issue presented by any case arising under Section 1983 is whether a plaintiff has sufficiently alleged a deprivation of a [federally protected right]." *Hernandez v. Texas Dep't of Protective & Regulatory Services*, 380 F.3d 872, 879 (5th Cir. 2004). The Court therefore begins its analysis here: Has Plaintiff sufficiently alleged a deprivation of a federally protected right? And because the Court answers this question in the negative, it need not proceed any further.

To state a claim under § 1983, a plaintiff must allege a violation of the Constitution or a federally granted right, and that the violation was committed by someone acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff alleges that all Defendants, including the public officials named in her Amended Complaint, violated her constitutional right of access to the courts, deprived her of equal protection of the laws in violation of both the 14th Amendment and 42 U.S.C. § 1981, and engaged in a civil conspiracy to deprive her of these rights. Again, all the BRDP and BRFD Officials have been sued in their individual capacities (R. Doc. 75 at 3) and move to dismiss these claims based on qualified immunity (R. Doc. 82).

### i.    Access to Courts

The Supreme Court has long recognized a substantive right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996).[14] But this right of access is only violated when government officials have effectively prevented a plaintiff from instituting litigation. *See Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (finding an "officially-created

---

616, 620 (5th Cir. 1992). "[C]omplaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Id.*

[14] *See Spears v. McCraw*, 2019 WL 3754218, at *7 (W.D. Tex. Aug. 8, 2019) (The right of access to courts "has been said to derive from the Privileges and Immunities Clause of Article IV, section 2 of the Constitution, as well as from the Due Process clauses of the Fifth and Fourteenth Amendments, and the right to petition found in the First Amendment."); *LaBarbara v. Angel*, 95 F. Supp. 2d 656, 664 (E.D. Tex. 2000) ("This right is based on the first amendment right to petition, and the Fifth and Fourteenth Amendment due process clauses.").

impediment to the ability to file an action" implicates the right of access to courts). In other words, the right of access is "implicated where the ability to file suit was delayed or blocked altogether." *Foster*, 28 F.3d at 430. Critically, "[a]s long as the plaintiff is able to file suit, the right of access is not abridged." *Dupard v. Lopinto*, 2020 WL 1503619, at *17 (E.D. La. Mar. 30, 2020); *see also Doe v. Dantin*, 2015 WL 3772133, at *3 (E.D. La. June 17, 2015) ("the right protects against officially-created barriers to filing an action on the underlying claim . . . it does not protect against an individual or entity's actions that might decrease the chance of success on the underlying action.").

Here, Plaintiff's numerous allegations fall short, as she was certainly able to file suit in state court complaining of the conditions at her apartment complex for which she called the BRPD, BRFD, and EMS for assistance on numerous occasions. (R. Doc. 75 at 39). Moreover, she later filed the instant lawsuit also complaining of the conditions at her apartment complex, as well as the response she received from employees of the apartment complex, the BRPD and BRFD Defendants, and other public officials. Plaintiff has also filed subsequent actions, including in this Court, complaining of conduct by the BRPD and other municipal officials. (R. Doc. 75 at 3-6, 27, 34, 37, 41, 52, 53, 57) (Plaintiff makes multiple references to her subsequent lawsuit in this Court against the BRPD, *Doe v. City of Baton Rouge*, No. 20-cv-514, in which she makes similar allegations of a grand conspiracy and public corruption).

Plaintiff may be dissatisfied with the investigations undertaken by officials with the BRPD and BRFD. She may believe the reports associated with her many complaints to and encounters with these officials are not adequate.[15] But this does not amount to a constitutional violation. *See*

---

[15] Plaintiff alleges "[t]hat denial of access to courts has manifested in intentional fabrication and omission of evidence by BRPD so that if and when Plaintiff tries to vindicate her rights or seek damages in court, it will be fruitless due to completely misleading records and destruction/withholding of the records." (R. Doc. 75 at 54). This is not enough to establish a violation as Plaintiff was not prevented from filing suit. To be sure, she goes on to allege the "denial of

*Harer v. Casey*, 962 F.3d 299, 306 (7th Cir. 2020) ("Granted, there is no constitutional right to have the police investigate any case at all, still less to do so to anyone's level of satisfaction."). And Plaintiff's right of access was not violated. *See Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994) (plaintiffs' rights to access courts not violated where they alleged "public officials wrongfully and intentionally concealed information crucial to a person's ability to obtain redress though the courts, and did so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduced the likelihood of one's obtaining the relief to which one was otherwise entitled"; critically, "the claimed violation is not an impediment to the ability to file suit"); *Jones v. Kelly*, 611 F. App'x 229, 231 (5th Cir. 2015) (affirming the dismissal of plaintiff's denial-of-access claim where plaintiff failed to "allege or explain how any defendant actually prevented him from taking any particular legal action"); *LaBarbara v. Angel*, 95 F. Supp. 2d 656, 659, 665 (E.D. Tex. 2000) (plaintiffs alleged police and university personnel conspired to cover up head football coach's fault in car collision resulting in death of plaintiffs' son; but court found no denial of access: "In order to establish damages on a denial of access claim, the cover-up must to some extent be successful in preventing the plaintiffs from instituting a suit—something this alleged cover-up failed to do."); *Doe v. Dantin*, 2015 WL 3772133, at *4 (E.D. La. June 17, 2015) ("The gravamen of Plaintiffs' allegations . . . is that Movants' actions made the prosecution of the criminal charges and the litigation of the current claims more difficult. In other words, the . . . focus [is] on actions that might have undermined their chance of success at trial. Such issues are not material to whether Movants interfered with their right to institute suit.").

---

access to courts "has also manifested as denial of the injunctive hearing, accompanied by unlawful machinations, disguised as 'judicial acts.'" (R. Doc. 75 at 54). In other words, Plaintiff acknowledges her ability to file suit was not impeded.

Because Plaintiff has not established a violation of her right of access to courts, the BRPD and BRFD Defendants are entitled to qualified immunity.

### ii.    Equal Protection

To the extent Plaintiff makes an equal protection claim, the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. To establish a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). Typically, a plaintiff must also show that the actions of the government official were motivated by improper considerations, such as sex, race, or religion. *See Bryan v. City of Madison Miss*., 213 F.3d 267, 277 (5th Cir. 2000). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).

Throughout her 69-page Amended Complaint, Plaintiff repeatedly claims that she was denied access to the courts or otherwise deprived of her rights by the various Defendants because "Plaintiff stood up to them and their criminal actions (see No. 20-514) and attempted to publicly expose them for crime cover-up." (R. Doc. 75 at 57). But, in claiming she was denied equal protection of the law in violation of the 14th Amendment, she includes a single allegation that comes out of left field:

> Because of the Plaintiff's social status, national origin, gender, and a combination of whichever else factors that the defendants construe as 'unworthy to be treated equally' or to be afforded the same protections of the laws that they would afford to other persons, they blocked and denied access to state and federal courts to Plaintiff . . . ."

(R. Doc. 75 at 57). But as explained below, these allegations fail to state a claim under the Equal Protection Clause.

First, Plaintiff's equal protection claim is more accurately characterized as an access to courts claim. Indeed, she has done nothing more than restate her previous claim that Defendants' conduct violated her right of access to the courts. And because the Court has already found that right was not violated, Plaintiff's equal protection claim must also fail as a matter of law. *See LaBarbara v. Angel*, 95 F. Supp. 2d 656, 666 (E.D. Tex. 2000) (dismissing plaintiffs' substantive due process claim as it simply restated their unsuccessful claim for denial of access to courts: "Since this is more accurately characterized as an access to courts claim, this court will not permit the plaintiffs to assert a substantive due process claim.").

But perhaps most important, Plaintiff's equal protection claim is wholly unsupported by and inconsistent with her factual allegations. Plaintiff's 69-page Amended Complaint alleges ad nauseum that her federally-protected rights were violated by Defendants out of spite and in retaliation for her efforts to expose their corruption. There is absolutely no mention or even suggestion that any of the alleged conduct was motivated by (or even perceived by Plaintiff as being motivated by) her sex, national origin, or social status.

Indeed, the Amended Complaint does not even address Plaintiff's national origin (and the Court is likewise unaware of Plaintiff's national origin) and it makes no mention of her social status within the community. While the Court reasonably assumes that Plaintiff identifies as a female, this is only because she refers to herself using feminine pronouns. But otherwise, there is absolutely no reference to Plaintiff's gender.

It seems Plaintiff included this seemingly random allegation as she thought it might be necessary to avoid dismissal when drafting her Amended Complaint. *See Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because the factual allegations in her Amended Complaint only allege that Defendants' conduct was motivated by her efforts to expose their corruption and by their personal disdain for Plaintiff, her equal protection claim fails as a matter of law. Because Plaintiff cannot state a claim under the 14th Amendment's equal protection clause, the individual BRPD and BRFD Defendants are entitled to qualified immunity.

### iii.     Section 1981

Plaintiff claims she "has been denied access to courts in retaliation for her attempts . . . to 'expose' the individuals who have been committing crimes under color of law. Just for that, Plaintiff was automatically denied equal rights under the law by those same individuals she was trying to hold accountable." (R. Doc. 75 at 54). Identical to her alleged 14th Amendment violation, she claims this conduct denied her "equal rights under the law" (R. Doc. 75 at 54), in violation of 42 U.S.C. § 1981. (R. Doc. 75 at 54).

However, any claim under section 1981 requires race-based discrimination. *See Guidry v. Pellerin Life Ins. Co.*, 364 F. Supp. 2d 592, 596 (W.D. La. 2005) (to state a "§ 1981 claim, plaintiffs must [allege] . . . intentional discrimination based on race.").

Here, identical to her 14th Amendment claim, Plaintiff summarily claims she "has been denied access to courts based on her social status, national origin, and gender" in violation of section 1981. (R. Doc. 75 at 54). She includes no allegation of race discrimination, and under these circumstances, her assertion of national origin discrimination cannot carry the day.

This Court has previously recognized that "[d]iscrimination against a person because of his or her ancestry can violate [a federal statute's] prohibition against race discrimination. While they

are not identical, there can be considerable overlap between 'race' and 'national origin.'" *Odeh v.*

*City of Baton Rouge/Par. of E. Baton Rouge*, 2016 WL 1254361, at *2 (M.D. La. Mar. 29, 2016)

(quoting EEOC Compliance Manual § 15-II (Aug. 2009)); *see also Saint Francis Coll. v. Al-*

*Khazraji*, 481 U.S. 604, 613 (1987) (in clarifying that § 1981 prevents discrimination based on

race, and not national origin per se, the Court also explained: "If respondent . . . can prove that he

was subjected to intentional discrimination based on the fact that he was born an Arab, rather than

solely on the place or nation of his origin, or his religion, he will have made out a case under §

1981."). But those circumstances are not present here.

Indeed, the Court need not consider whether national origin and race overlap, as none of

the factual allegations in the Amended Complaint even hint at Plaintiff's national origin (or race),

or in any way suggest the alleged conduct was taken because of her national origin (or race). As

previously explained, this statement — that Plaintiff's rights were deprived because of her sex,

national origin, and social status — is wholly unsupported by the entirety of factual allegations in

the Amended Complaint. Again, Plaintiff alleges ad nauseum that her federally protected rights

were violated by Defendants out of spite and in retaliation for her efforts to expose their corruption.

To be clear, there is absolutely no mention or even suggestion that any of the alleged conduct was

motivated by, or even perceived by Plaintiff as being motivated by, national origin (or gender or

social status). Therefore, as a matter of law, Plaintiff cannot establish a violation of § 1981, and

the individual BRPD and BRFD Defendants are entitled to qualified immunity.

### iv.    Civil Conspiracy

Plaintiff also claims a civil conspiracy among all 22 Defendants "to deny Plaintiff (in

retaliation for her attempts to hold them accountable and expose their corruption) access to courts

. . . ." (R. Doc. 75 at 52). To state a § 1983 conspiracy claim, a plaintiff must allege facts to support

(1) the existence of a conspiracy involving state action, and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. Put simply, the plaintiff must show that the defendants agreed to commit actions that violated the plaintiff's constitutional rights. *See Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("must show that the defendants agreed to commit an illegal act."). A "bald allegation[]" that a conspiracy exists, unsupported by any factual allegations, is insufficient to state a claim. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties).

Here, the only allegations Plaintiff makes to support her conspiracy claim are bald and conclusory statements that the Defendants—which include 22 private and public actors, employed by multiple private and government entities—entered a vast and wide-ranging conspiracy to cover-up the alleged criminal activity (illegal narcotics) of the residents at her apartment complex and to retaliate against her for trying to expose their corruption. She does not allege an actual agreement between one or more parties. And she makes no effort to explain why 22 Defendants would be motivated to participate in such a wild conspiracy. Her allegations are fantastical and simply implausible. *See Doe v. City of Baton Rouge*, 2021 WL 481005, at *9 (M.D. La. Jan. 5, 2021) (finding plaintiff's "assertions of a vast multi-year conspiracy among state and municipal offices and their representatives, as well as judges, attorneys, and physicians, are unrealistic and implausible. Plaintiff does not . . . explain why forty-four named Defendants (and, it seems to her, all the judges of this Court) would be motivated to participate in such a conspiracy against her.").

Further, "a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "There must be an actual deprivation of constitutional rights in furtherance of an agreement between conspirators to establish a § 1983

claim." *Bright v. City of Killeen, Texas*, 532 F. Supp. 3d 389, 401 (W.D. Tex. 2021). As discussed above, Plaintiff has failed to plead a violation of her constitutional (or federal) rights. Without an actual violation of a protected right, her § 1983 conspiracy claim fails. *See Spears v. McCraw*, 2021 WL 3439148, at *3 (5th Cir. Aug. 5, 2021) ("Because Spears does not show a violation of his clearly established constitutional rights, his claim alleging a conspiracy to violate his rights necessarily fails.").

The individual BRPD and BRFD Defendants are therefore entitled to qualified immunity for all of Plaintiff's claims made actionable under section 1983.

### C.    Section 1983 Claims Against the City of Baton Rouge

In asserting a claim under section 1983, Plaintiff alleges the City of Baton Rouge, through the BRPD, conspired with the other Defendants to commit "unconstitutional acts," denying her access to courts. (R. Doc. 75 at 57). Separately, she alleges a violation of "the Fourteenth Amendment['s] . . . Equal Protection Clause," as well as a denial of "equal rights under the law" in violation of 42 U.S.C. § 1981. (R. Doc. 75 at 54, 57). The Court considers all these claims under § 1983 below and finds they all must fail.

At the outset, "there must be a constitutional violation . . . for a municipality to be held liable [under § 1983]." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (damages cannot be awarded "against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm."); *Johnson v. Turner*, 2022 WL 3356341, at *9 (E.D. La. Aug. 15, 2022) ("The Supreme Court has explained that a municipality cannot be liable if a person has suffered no constitutional injury at the hands of the individual police officer.").

Here, the Court has already found that Plaintiff cannot establish a violation of any federally protected rights—constitutional or otherwise. For this reason alone, her § 1983 claims against the City of Baton Rouge must fail as a matter of law. But even if Plaintiff had alleged a constitutional violation by one of the individual officers, which she has not, she would still be unable to hold the City of Baton Rouge liable.

"Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, 191 F. Supp. 3d 623, 626 (M.D. La. 2016); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("The three attribution principles identified here—a policymaker, an official policy and the moving force of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."). In her Amended Complaint, Plaintiff alleges:

> The actions of the city-parish-state defendants and their co-conspirators were done pursuant to one or more interrelated de facto policies, practices and/or customs of the defendant the City of Baton Rouge through its police department, fire department, and city-parish attorney office:
>
> 1.    Failing to properly investigate, charge and prosecute, and otherwise engaging in acts of cover-up, concealment, suppression and alteration of evidence in order to protect those it favors from criminal prosecution and civil liability.
>
> 2.    Filing false reports and giving false statements and testimony and otherwise covering up the true facts.
>
> 3.    Perpetuating, encouraging, and condoning the unlawful police code of silence, police misconduct, fabrication, suppression, and destruction of evidence.
>
> 4.    Refusing to properly investigate, arrest, and charge individuals whom the police favor or from whom has been getting any monetary or other compensation, such as PPQBR, Bogan, and Brookins, and also in retaliation

for Plaintiff's attempts to tell the truth and make BRPD and LADOJ 'famous' – just not in the way they wanted to.

(R. Doc. 75 at 56).

But critically, Plaintiff has failed to identify an official policy or custom. An official policy or custom "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff has certainly not identified any official policy.

To the extent she is attempting to allege an official custom, she has only cited to the alleged incidents in which she was involved. (R. Doc. 75 at 56). "But plausibly, to plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his [or her] injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (plaintiff failed to allege an official custom where he only cited to "incident in which [plaintiff] was involved"). Therefore, Plaintiff has not sufficiently alleged an official policy or custom, as required for municipal liability under section 1983.

Also critical is Plaintiff's failure to identify "a municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy that caused [Plaintiff's] injuries." *Piotrowski v. City of Houston*, 237 F.3d 567, 578–79 (5th Cir. 2001). While a plaintiff is not required to "plead a specific identity," *Piotrowski*, 879 F.3d at 623, they must allege "facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016). In *Groden*, for example, the plaintiff's allegations connected the alleged policy to the city council by alleging it publicly announced the policy and gave media interviews describing it. *Groden v. City of Dallas, Texas*, 826 F.3d 280, 286 (5th Cir. 2016) ("Groden alleged that the city

publicly announced a new policy" of cracking down on vendors in Dealey Plaza and that the city's official "spokesman, gave interviews describing the new policy." These allegations were sufficient to plead that this was an "official policy made by the policymaker of the city (i.e., the city council).").

Here, Plaintiff summarily claims that the alleged conduct was undertaken by the City of Baton Rouge "though its police department, fire department, and city-parish attorney office." (R. Doc. 75 at 56). Given the above standards, this is not enough. Therefore, because Plaintiff has not sufficiently alleged an official policy or custom, or a policymaker, her municipal liability claims — "Count III – (42 U.S.C. § 1981 – Equal Rights Under the Law)", "Count V - (42 U.S.C. § 1983 – *Monell* Policy Claim against City of Baton Rouge)," "Count VI - (The Fourteenth Amendment Violations – The Equal Protection Clause)" — must fail for this additional reason.

### D.    Section 1985 and 1986 Claims Against City and Individual Officers

Plaintiff claims that all Defendants, including the City of Baton Rouge and the individual BRPD and BRFD Defendants, conspired with one another with the intent to "deny Lydia McCoy equal protection of the laws" — specifically, "access to courts." (R. Doc. 75 at 52-54) ("All those unlawful conspiratorial acts have been done in order to deny Plaintiff access to courts or the opportunity of redress and vindication in the court of law.").

She claims that this conduct violated 42 U.S.C. §§ 1985 and 1986. (R. Doc. 75 at 55) ("Each defendant and their named and unnamed co-conspirator neglected to prevent Section 1985 conspiracy. 42 U.S.C. § 1986 applies and is fully enforceable."); (R. Doc. 75 at 54) (alleging conspiracy to interfere with civil rights and deny her equal protection of the laws — specifically, access to courts — in violation of section 1985).

First, the relevant part of section 1985(3), "making it unlawful to engage in a conspiracy to deprive individuals the 'equal protection of the laws' . . . includes a requirement to plead race-based animus." *Cervini v. Cisneros*, 2022 WL 867034, at *5 (W.D. Tex. Mar. 23, 2022); *Bryan v. City of Madison, Miss*., 213 F.3d 267, 276 (5th Cir. 2000) (requires "an allegation of a race-based conspiracy"); *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (noting that while the Supreme Court has stated this provision may cover other types of class-based discrimination in additional to race, it has still "never held that nonracial animus is sufficient. And [the Fifth Circuit] ha[s] held racial animus is required: In this circuit the only conspiracies actionable under section 1985(3) are those motivated by racial animus.").[16]

The allegations in Plaintiffs' Amended Complaint have nothing to do with race. (R. Doc. 75). Throughout its 69 pages, the Amended Complaint repeatedly alleges that the various Defendants conspired against Plaintiff out of "spite" and "in retaliation for Plaintiff's attempt to hold them accountable and expose their corruption." (R. Doc. 75 at 27, 53). There is no mention

---

[16] Putting aside Fifth Circuit precedent that requires an allegation of racial animus, Plaintiff has still not alleged some other "form of class-based discrimination" in connection with her § 1985 conspiracy claim. *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). In other words, her § 1985 claim would still fail outside the Fifth Circuit, as she has failed to link the alleged § 1985 conspiracy to any protected status in her Amended Complaint (R. Doc. 75 at 52-54) (alleging Defendants conspired "in retaliation for Plaintiff's attempts to home them accountable and expose their corruption."). *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268–69, 113 S. Ct. 753, 759, 122 L. Ed. 2d 34 (1993) ("[T]he language of § 1985(3) requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").

However, the Court again notes that in claiming she was denied equal protection of the laws in violation of 42 U.S.C. § 1981 and the 14th Amendment, Plaintiff summarily alleges she "has been denied access to courts based on her social status, national origin, and gender." (R. Doc. 75 at 54, 57). But even applying this allegation to her § 1985 conspiracy claim, it would still fail. As the Court has already explained, this allegation is wholly inconsistent with and unsupported by the factual allegations made throughout the Amended Complaint (R. Doc. 75). *See infra* pt. B.ii-iii. Indeed, there is absolutely no mention or even suggestion that any of the alleged conduct was motivated by, or even perceived by Plaintiff as being motivated by, her sex, national origin, or social status. The Amended Complaint also makes no reference to Plaintiff's race, as previously explained. *See infra* pt. B.ii-iii. And so, Plaintiff cannot state a claim under section 1985(3).

of Plaintiff's race or any alleged conduct that would even remotely suggest racial animus.[17] The

section 1985 claims must therefore be dismissed with prejudice. *See Cantu v. Moody*, 933 F.3d

414, 419 (5th Cir. 2019) ("The relevant text of § 1985(3) criminalizes only conspiracies that

involve depriving someone of "equal protection of the laws" . . . . In this circuit the only

conspiracies actionable under section 1985(3) are those motivated by racial animus."). "Further,

because a violation of § 1986 is premised on a violation of § 1985, [Plaintiff's] § 1986 claims must

be dismissed as well." *Sharp v. Palmisano*, 2013 WL 5969661, at *6 (E.D. La. Nov. 8, 2013).

Finally, the "defense of qualified immunity is available to public officials for claims under

42 U.S.C. [§] 1985." *Grigsby & Assocs., Inc. v. City of Shreveport*, 294 F. Supp. 3d 529, 541 (W.D.

La. 2018). Because Plaintiff cannot establish a violation of section 1985, the individual BRPD and

BRFD Defendants are entitled to qualified immunity. Moreover, Plaintiff's section 1985 claim

against the City of Baton Rouge likewise fails for the same reason as her section 1983 claims —

she has not plead any official policy or custom that caused a deprivation of any rights. *See

Crawford v. City of Houston Texas*, 260 F. App'x 650, 652 (5th Cir. 2007) (In a section 1985 claim,

"the plaintiff cannot proceed under a theory of respondeat superior and must instead satisfy the

'custom or policy' test fashioned for suits against a municipality under § 1983."); *Smith v. City of

New York*, 290 F. Supp. 2d 317, 321 (E.D.N.Y. 2003) ("[U]nder § 1983 . . . a plaintiff must show

that the violation of her constitutional rights resulted from a municipal custom or policy. The same

requirements apply to a claim for municipal liability under § 1985."). Beyond that, she has not

established an underlying violation of section 1985. Therefore, Plaintiff cannot state a claim

against the City of Baton Rouge or the individual BRPD and BRFD Defendants under 42 U.S.C.

---

[17] *See infra* pt. B.ii-iii (explaining how Plaintiff's conclusory allegation of national origin discrimination is wholly
unsupported by the record; and, while there can be some overlap between race and national origin, those circumstances
are not present here).

§§ 1985 and 1986. Moreover, the individual BRPD and BRFD Defendants are entitled to qualified immunity for these claims.

### E.    State Law Claims Against City and Individual BRPD and BRFD Defendants

Plaintiff also asserts an array of state law clams against the City of Baton Rouge and the individual BRPD and BRFD Defendants. Because the Court recommends that all of Plaintiff's federal claims against these Defendants be dismissed with prejudice, it should decline to exercise supplemental jurisdiction over any state law claims asserted in the Amended Complaint. (R. Doc. 75). And so, if the Court adopts this Report and Recommendation, it should also "decline to exercise jurisdiction" over any state law claims against the City of Baton Rouge and the individual BRPD and BRFD Defendants, 28 U.S.C. § 1367(c)(3), dismissing those state law claims without prejudice. *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

For the reasons given above in parts III.B, III.C, III.D, and III.E of this Report and Recommendation,

**IT IS RECOMMENDED** that the BRPD and BRFD Defendants' Motion to Dismiss (R. Doc. 82) be **GRANTED**. Plaintiff's federal claims against the City of Baton Rouge and the individual BRPD and BRFD Defendants should be **DISMISSED with prejudice**, *see Young v. Akal*, 985 F. Supp. 2d 785, 798 (W.D. La. 2013) ("Dismissal of claims on grounds of qualified immunity constitutes a dismissal with prejudice."), and the Court should "decline to exercise jurisdiction" over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3), which should be **DISMISSED without prejudice**, *see Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent

claims. However, the dismissal of the pendent claims should expressly be without prejudice . . . .").

### F.    Claims Against Remaining Defendants

The following Defendants did not move to dismiss following Plaintiff's Amended Complaint: Zantavia Bogan and Kendal Brookins ("the managers of the apartment complex 'Retreat at Brightside' where Plaintiff lived"), PPQBR, LLC (the owner of the apartment complex), Cardinal Group Management, LLC (the company managing the apartment complex), Gideon Carter (the attorney who represented the apartment complex in the state court litigation before Judge Wilson Fields), and Larry Spencer (a justice of the peace who was connected with an alleged eviction proceeding initiated against Plaintiff).

Because Plaintiff is proceeding in forma pauperis, the Court has screened her claims against these non-moving Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Having reviewed Plaintiff's claims against the non-moving Defendants, the Court recommends that all federal and state law claims against Larry Spencer, a justice of the peace, are barred by judicial immunity and should be dismissed with prejudice. As for the remaining non-moving Defendants, all of whom are private individuals and entities, the Court recommends that Plaintiff's federal law claims be dismissed with prejudice as frivolous and because Plaintiff has failed to state a claim, as discussed below. Additionally, the Court should decline to exercise jurisdiction over Plaintiff's state law claims, dismissing those claims without prejudice.

### i.    Larry Spencer is Entitled to Absolute Judicial Immunity

According to the Amended Complaint, Larry Spencer is a justice of the peace who presided over the eviction proceeding allegedly filed against Plaintiff during the summer of 2020. (R. Doc. 75 at 50, 51, 63). Plaintiff claims that, after the filing of the eviction, Spencer refused her request to permit discovery and threatened her with the police if she did not vacate the premises. (R. Doc. 75 at 50-51).

"Absolute judicial immunity extends to all judicial acts which are not performed in the absence of all jurisdiction. This immunity extends to all judges, irrespective of their status in the judicial hierarchy, including justices of the peace" like Larry Spencer. *Laird v. Spencer*, 2020 WL 1083826, at *2 (M.D. La. Mar. 6, 2020). Judicial immunity acts as a bar to both federal and state law claims.

Here, all the factual allegations in the Amended Complaint concern actions taken by Spencer in his capacity as a justice of the peace while presiding over the eviction filed against Plaintiff. (R. Doc. 75 at 50-51). Indeed, Spencer had the discretion to permit or deny discovery as part of the eviction proceedings. *See* La. C. Civ. P. art. 4912.2(C) ("No . . . discovery proceedings shall be used except upon approval of the court. The court shall grant discovery only upon notice and good cause shown and limited to the necessities of the case."). And while Plaintiff may take issue with Spencer's decisions related to her eviction, all her allegations concern judicial actions taken in his capacity as justice of the peace. Beyond that, article 4912(A)(1) of the Louisiana Code of Civil Procedure vests in the justice of the peace jurisdiction over eviction proceedings. *See Bourg v. Fabre*, 2016 WL 6563425, *2 (E.D. La. Nov. 4, 2016) ("An eviction proceeding and the judgment arising from that proceeding are normal judicial functions" of a justice of the peace, who has jurisdiction over eviction proceedings.). In other words, it seems clear that Spencer did not act

without jurisdiction. What's more, Plaintiff does not allege that Spencer acted without jurisdiction or that his conduct was not judicial in nature. *See Bourg v. Fabre*, 2016 WL 6563425, at *3 (E.D. La. Nov. 4, 2016) ("It is indisputable that Defendant Fabre did not act in the clear absence of all jurisdiction and that absolute judicial immunity attaches to his actions here."); *Dawson v. Norsworthy*, 2019 WL 2343017, at *2 (W.D. Tex. June 3, 2019) ("Plaintiff does not complain of any actions taken by Justice of the Peace Towslee or Judge Reva C. Towslee that were nonjudicial in nature nor does he show that they were acting in the clear absence of all jurisdiction."). Therefore, Plaintiff's federal and state law claims against Larry Spencer are barred by absolute judicial immunity and should be dismissed with prejudice. *See Alexander v. Tangipahoa Par. Sheriff Dep't*, 2006 WL 4017825, at *5 (E.D. La. Oct. 2, 2006) ("[I]t appears that the majority of courts, including the Fifth Circuit, currently hold that the court may raise the issue of [] immunity sua sponte.") (collecting cases); *Thomas v. Dovenmuehle Ltd.*, 2013 WL 1181201, at *4 (N.D. Tex. Mar. 21, 2013) (dismissing justice of the peace sua sponte).

### i.    CARES Act

Plaintiff alleges that Bogan, Brookins, PPQBR, Cardinal (and Spencer) violated the CARES Act, which "prohibited them from filing or executing evictions [until] August 24, 2020." (R. Doc. 75 at 63).

The Coronavirus Aid Relief and Economic Security Act was passed on March 27, 2020, in response to the ongoing Covid-19 pandemic and the economic harm it caused. *See* Pub. L. 116-136, 134 Stat. 281 (2020). Section 4024 of the CARES Act instituted a 120-day prohibition on the initiation of eviction proceedings for rental properties receiving federal assistance or financed through federally backed mortgage loans. *Id*. at § 4024(b)(1); *see also Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 157 (S.D.N.Y. 2020) ("The CARES Act provided

numerous forms of relief . . . including a prohibition against new eviction cases filed by housing providers who participate in certain federal housing rental programs on the basis of non-payment of rent."). Ultimately, Congress did not renew the CARES Act, and the eviction moratorium for rental properties ended on July 27, 2020 — not August 24, 2020, as Plaintiff claims.

Critical here, "courts have repeatedly determined the CARES Act did not create a private right of action for violations." *Betancourt v. Total Property Management*, 2022 WL 2359286, at *3 (E.D. Cal. June 30, 2022) (dismissing claim that landlord violated CARES Act eviction moratorium); *see also American Video Duplicating, Inc. v. City Nat'l Bank*, 2020 WL 6882735, at *5 (C.D. Cal. Nov. 20, 2020) ("Unsurprisingly, every court to address whether the CARES Act created an implied private right of action has held that it does not"); *Radix Law PLC v. JPMorgan Chase Bank N.A.*, 508 F. Supp. 3d 515, 520 (D. Ariz. 2020) ("[T]here is no private right of action to enforce the CARES Act."); *Daniel T.A. Cotts PLLC v. American Bank, N.A.*, 2021 WL 2196636, at *5 (S.D. Tex. Feb. 9, 2021) ("[T]his Court joins the numerous district courts across the country who hold that the CARES Act provides no private right of action."); *Shehan v. United States Dept. of Justice*, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020) (noting the absence of any decision "finding that the CARES Act creates any implied private right of action").

Because the CARES Act provides no private right of action, this federal claim fails as a matter of law and should be dismissed with prejudice.

### iii.    Remaining Federal Law Claims

Plaintiff's claims under section 1981, 1983, 1985, and 1986, as well as her 14th Amendment Equal Protection Claim, were asserted against all Defendants named in the Amended Complaint, including the non-moving Defendants.[18] For the reasons already provided in parts III.B

---

[18] Aside from Larry Spencer, the non-moving Defendants are all private actors who can typically not be held liable under 42 U.S.C. § 1983. But because Plaintiff cannot make out a cognizable violation of any federal right or right

and III.D of this Report and Recommendation, Plaintiff has not plead a cognizable violation of any of federal statute or any right secured by the United States Constitution. Therefore, Plaintiff's Amended Complaint fails to state any claim against the non-moving Defendants under federal law and her federal law claims should be dismissed with prejudice.

### iv.    State Law Claims

Because the Court recommends that all of Plaintiff's federal claims against these Defendants be dismissed with prejudice, it should decline to exercise jurisdiction over any state law claims asserted against them in the Amended Complaint. (R. Doc. 75). And so, if the Court adopts this Report and Recommendation, it should also "decline to exercise jurisdiction" over any state law claims against the non-moving Defendants, 28 U.S.C. § 1367(c)(3), dismissing those state law claims without prejudice. *See Enochs v. Lampasas Cnty*., 641 F.3d 155, 161 (5th Cir. 2011) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

For the reasons given above, **IT IS RECOMMENDED** that Plaintiff's federal and state law claims against Larry Spencer are barred by judicial immunity and should be **DISMISSED with prejudice**. As to the remaining non-moving Defendants, Zantavia Bogan, Kendal Brookins, PPQBR, LLC, Cardinal Group Management, LLC, and Gideon Carter, **IT IS RECOMMENDED** that Plaintiff's federal law claims be **DISMISSED with prejudice**, and if the Court adopts this Report and Recommendation, it should decline to exercise jurisdiction over any state law claims against these Defendants, which should be **DISMISSED without prejudice**. *See Enochs v. Lampasas Cnty*., 641 F.3d 155, 161 (5th Cir. 2011) ("Our general rule is to dismiss state claims

---

secured by the Constitution, the Court need not reach the issue of whether any of the private actors may be liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 152 (1970) (A private party may be held liable under § 1983 if he or she is a "willful participant in joint activity with the state or its agents.").

when the federal claims to which they are pendent are dismissed."); *Scheanette v. Dretke*, 199 F. App'x 336, 337 (5th Cir. 2006) ("[B]ecause the district court properly dismissed all of Scheanette's federal claims [as frivolous], the district court's dismissal without prejudice of his supplemental state law claims was not an abuse of discretion under 28 U.S.C. § 1367.").

### G.    Futility of Further Amendment

"Generally, a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Baxrowz v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).  In other words, a plaintiff should be given a chance to allege her "best case." *Baxrowz*, 136 F.3d at 1054. "While a precise definition of a plaintiff's 'best case' is elusive" it is generally assumed that a "plaintiff asserts [her] best case after [she] is apprised of the insufficiency of the complaint." *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008). In this case, each Defendant filed a Motion to Dismiss (R. Docs. 25, 42, 43, 44) in response to Plaintiff's original Complaint (R. Doc. 1). Because Plaintiff is proceeding pro se, the Court granted her an opportunity to amend her Complaint (R. Docs. 68, 74) in light of those Motions to Dismiss. Plaintiff was therefore apprised of the alleged defects in her original Complaint and was afforded the opportunity to present her 'best case.' (R. Doc. 75). This Amended Complaint is her best case. Therefore, any further amendment would prove futile, and her claims should be dismissed as recommended above.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that Plaintiff's cause of action be **DISMISSED** in its entirety, as follows:

- Wilson Fields enjoys absolute judicial immunity. And so, his Motion to Dismiss (R. Doc. 78) should be **granted** and all claims against him be **dismissed with prejudice**.

- The City of Baton Rouge and the individual BRPD and BRFD Defendants' Motion to Dismiss (R. Doc. 82) should be **granted**. Plaintiff's federal claims should be **dismissed with prejudice,** and the Court should "decline to exercise jurisdiction" over the state law claims pursuant to 28 U.S.C. § 1367(c)(3), which should be **dismissed without prejudice**.

- Non-moving Defendant, Larry Spencer, enjoys absolute judicial immunity and all claims against him (both state and federal) should be **dismissed with prejudice**.

- Defendants, Zantavia Bogan, Kendal Brookins, PPQBR, LLC, Cardinal Group Management, LLC, and Gideon Carter, did not move to dismiss. Nonetheless, Plaintiff's federal claims should be **dismissed with prejudice,** and the Court should "decline to exercise jurisdiction" over the state law claims pursuant to 28 U.S.C. § 1367(c)(3), which should be **dismissed without prejudice**.

Signed in Baton Rouge, Louisiana, on September 9, 2022.


**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**